# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF LOUISIANA

**C. ROBINSON ENTERPRISES, LLC, ET AL.**          **CIVIL ACTION NO.**

**VERSUS**                                         **24-512-JWD-EWD**

**ALM BATON ROUGE, LLC AND**                      **LEAD**
**AMAZON.COM SERVICES, LLC**

*Consolidated with*

**C. ROBINSON ENTERPRISES, LLC, ET AL.**          **CIVIL ACTION NO.**

**VERSUS**                                         **25-176-JWD-EWD**

**AMAZON LOGISTICS, INC. AND**                    **MEMBER**
**MISSY A. STOKER**

## NOTICE

Please take notice that the attached Magistrate Judge's Report and Recommendation has been filed with the Clerk of the U.S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on August 6, 2025.

*/s/ Erin Wilder-Doomes*

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **C. ROBINSON ENTERPRISES, LLC, ET AL.** | **CIVIL ACTION NO.** |
| **VERSUS** | **24-512-JWD-EWD** |
| **ALM BATON ROUGE, LLC AND AMAZON.COM SERVICES, LLC** | **LEAD** |

*Consolidated with*

| | |
|---|---|
| **C. ROBINSON ENTERPRISES, LLC, ET AL.** | **CIVIL ACTION NO.** |
| **VERSUS** | **25-176-JWD-EWD** |
| **AMAZON LOGISTICS, INC. AND MISSY A. STOKER** | **MEMBER** |

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court is the Ex Parte Motion for Leave to File Second Amended Notice of Removal,[1] filed by Amazon.com Services, LLC ("Amazon.com") and ALM Baton Rouge, LLC ("ALM"), defendants in the lead case. The Motion is opposed by C. Robinson Enterprises, LLC ("CRE") and Chad Robinson ("Robinson") (together, "Plaintiffs").[2] Because ALM is improperly joined, it is *sua sponte* recommended[3] that ALM, whose citizenship is unclear, be dismissed from

---

[1] R. Docs. 13, 15 and *see* reply brief at R. Doc. 23. Also pending is a Motion to Remand, filed by Plaintiffs, relating to both cases, which overlaps with the current Motion to the extent it raises arguments about the improper joinder of Defendant ALM Baton Rouge, LLC. The Motion to Remand is opposed by Amazon.com and Amazon Logistics, Inc., a defendant in the member case. R. Doc. 34, 43. Plaintiffs' claims against ALM are addressed here. The remaining arguments in the Motion to Remand concerning the alleged improper joinder of Missy Stoker, a defendant only in the member case, will be addressed in due course.

[2] R. Doc. 20.

[3] A magistrate judge may decide motions for leave to file amended pleadings. *See e.g. Mornes v. Valdez,* 414 F.Supp.3d 888, 890 (N.D. Tex. 2019) (noting that, "the Court of Appeals for the Fifth Circuit has addressed this issue, holding that a motion for leave to amend is not dispositive and, therefore, a magistrate [judge] may rule on it. *See PYCA Indus., Inc. v. Harrison Cty. Waste Water Mgmt. Dist.*, 81 F.3d 1412, 1420-21 (5th Cir. 1996) ….") (other citations omitted). However, because dismissal of Plaintiffs' claims against ALM is recommended, the Motion is addressed by report and recommendation.

the lead case, without prejudice.[4] As ALM's citizenship need not be considered, and as the other requirements of diversity subject matter jurisdiction are met, it is further recommended that the Motion be granted.

I. **BACKGROUND**

This is a civil action asserting negligence claims for damages arising out of the termination of a contract, which has a lengthy procedural history in this Court. The facts, according to Plaintiffs, are as follows (the "Incident"). Plaintiff CRE was an Amazon Delivery Service Partner ("DSP") for two-years, working out of a facility owned and/or maintained by ALM and/or Amazon.com (together, "Defendants") in Baton Rouge, Louisiana, which the parties refer to as "DLB2."[5] Plaintiffs provided their delivery services on behalf of Amazon Logistics, Inc. ("ALI"),[6] a defendant in the member case but not in the lead case. Plaintiffs claim to have enjoyed "much success" with ALI, with average annual revenues of $2.8 million.[7]

On May 11, 2023, Robinson conducted an employee meeting inside DLB2 during which an employee became unruly.[8] The employee flipped over a table, yelled at and "tower[ed] over" Robinson. The employee refused to leave, so Robinson requested that one of his employees, the dispatcher, call the police because there was no security at DLB2.[9] To try to diffuse the situation,

---

[4] This Report and Recommendation is confined to the alleged improper joinder of ALM, and its effect on the Court's subject matter jurisdiction. Since ALM is not a defendant in the member case, the Report and Recommendation only applies to the lead case.

[5] R. Doc. 1-2, pp. 1-3. This Report and Recommendation also refers to the subject facility, as well as the parking lot where the Incident took place, as "DLB2."

[6] R. Doc. 1-2, p. 2, ¶ 6.

[7] R. Doc. 1-2, p. 3, ¶ 13.

[8] Plaintiffs allege in this case that the employee engaged in the Incident was "screened for employment by Defendants (or their related entities or third-party contractors)." R. Doc. 1-2, p. 2, ¶ 7. However, Defendants consistently contend that the employee involved in the Incident was a CRE employee, not an employee of Defendants. R. Doc. 13-2, ¶¶ 3, 8 and *see, e.g.*, R. Doc. 43, p. 2. It is not necessary to resolve this dispute for purposes of the Report and Recommendation.

[9] R. Doc. 1-2, p. 2, ¶¶ 8-9.

Robinson left the building.[10] Fearing for his safety and the safety of others, Robinson retrieved his firearm from his vehicle, which he holstered on his hip. The "enraged" employee then entered the parking lot, "stormed" at Robinson, and muttered "let's go." In response, Robinson put his hands near his firearm and the employee backed away, after which the police arrived.[11] Months later, ALI notified Plaintiffs that their contract with ALI was terminated effective November 3, 2023 due to Plaintiffs' breach of policies arising out of the Incident.[12]

On May 9, 2024, Plaintiffs filed their Petition for Damages ("Complaint") against Defendants in Louisiana state court. On June 21, 2024, Amazon.com removed the case to this Court, with ALM's consent, alleging subject matter jurisdiction under 28 U.S.C. 1332.[13] The Notice of Removal ("NOR") adequately alleged that the amount in controversy exceeds $75,000, exclusive of interest and costs, based on Plaintiffs' claim of losing millions in revenue due to ALI's termination of Plaintiffs' delivery service contract following the Incident.[14] As for diversity of citizenship, Robinson is the only member of CRE, and both were properly alleged to be Louisiana citizens. Amazon.com was properly alleged to unwind to a Delaware corporation with its principal place of business in Washington.[15] However, the citizenship of ALM, which was alleged to have one member, LM Logistics REIT ("REIT"), a real estate investment trust, was not adequately pleaded in the NOR.[16] Therefore, Amazon.com was ordered to provide adequate citizenship

---

[10] R. Doc. 1-2, p. 2, ¶ 9.

[11] R. Doc. 1-2, pp. 2-3, ¶¶ 10-12.

[12] R. Doc. 1-2, p. 3, ¶ 14.

[13] R. Docs. 1; 1-1.

[14] R. Doc. 1, ¶ 6; R. Doc. 1-2, ¶ 13.

[15] R. Doc. 1, ¶ 5.

[16] *See* R. Doc. 8. The original NOR failed to identify the REIT's trustees and members, and only provided negative allegations of citizenship, *to-wit*: "Defendant, ALM, is an LLC whose sole member, LM Logistics REIT, is a real estate investment trust organized under the laws of the state of Texas with a principal place of business in San Antonio, Texas. On information and belief, no direct member of LM Logistics REIT is incorporated in Louisiana and no

3

information for ALM.[17]  In response to the Court's June 25, 2024 Order, Amazon.com filed its Motion for Leave to File Amended Notice of Removal with supporting memorandum and proposed Amended NOR.[18]  The memorandum asserted two arguments in support of Amazon.com's revised citizenship allegations for ALM in the proposed Amended NOR; however, because neither had merit, Amazon.com's Motion for Leave was denied without prejudice to Amazon.com refiling an amended NOR that properly alleged the citizenship of ALM, or to Amazon.com withdrawing the NOR.[19]

In response to the Court's August 29, 2024 Order, Amazon.com filed the current Motion and the Lease Agreement ("Lease") between ALM and Amazon.com for DLB2.[20]  Through the current Motion, Defendants newly contend that the citizenship of ALM does not need to be considered because ALM is improperly joined, which suggests that ALM's citizenship is not diverse from Plaintiffs' citizenship.  Plaintiffs were ordered to file either a response to the Motion, or an amended complaint deleting all claims against ALM, if Plaintiffs agreed that ALM was improperly joined.[21]  Plaintiffs then filed their Response to Ex Parte Motion for Leave to File

---

manager is a citizen of Louisiana. As a result … ALM is a citizen of Texas or other states not including Louisiana." R. Doc. 1, ¶ 5.  However, *see Santander Consumer USA, Inc. v. Sandy Sansing Nissan, Inc.,* No. 21-2471, 2022 WL 2124452, at *3 (N.D. Tex. May 13, 2022), report and recommendation adopted, No. 21-2471, 2022 WL 2118973 (N.D. Tex. June 13, 2022)("to properly establish diversity jurisdiction where one or more parties is an LLC or trust, a notice of removal must both identify all members and allege their citizenship.") and *Nunez v. ACE Am. Ins. Co.*, No. 17-1593, 2017 WL 6997341, at *4 (M.D. La. Dec. 28, 2017), report and recommendation adopted, No. 17-1593, 2018 WL 493398 (M.D. La. Jan. 16, 2018) (citizenship must be affirmatively alleged; negative allegations are insufficient).

[17] R. Doc. 8. Amazon.com initially attempted to substitute the original NOR to cure the deficiency that it was not signed by counsel.  The motion to substitute was denied so that the deficiencies with the citizenship allegations could also be corrected. R. Doc. 1, p. 4; R. Doc. 5; and R. Doc. 8.

[18] R. Docs. 9 through 9-2.  The Motion is mis-labelled as the "Memorandum in Support." R. Doc. 9.

[19] R. Doc. 12, p. 5.

[20] R. Docs. 13, 15.

[21] R. Doc. 19.

Second Amended Notice of Removal ("Response"),[22] and Amazon.com filed its reply.[23] The Motion is fully briefed and oral argument is not necessary.

## II. LAW AND ANALYSIS

### A. Legal Standards as to Subject Matter Jurisdiction and Improper Joinder

"Federal courts are courts of limited jurisdiction…It is to be presumed that a cause lies outside this limited jurisdiction…."[24] "Pursuant to 28 U.S.C. § 1332(a), this court has original jurisdiction "of all civil actions where (1) the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and (2) is between citizens of different States."[25] "The removing party has the burden of proving federal diversity jurisdiction.[26] Remand is proper if at

---

[22] R. Doc. 20. Plaintiffs filed their Response, with an incorporated "Motion to Remand." *Id.* The purported Motion to Remand is procedurally improper as cumulated with Plaintiffs' Response and was filed in direct contravention of this Court's briefing Order, which expressly instructed that Plaintiffs need not file a motion to remand in response to the current Motion. *See* R. Doc. 19, p. 3 ("The Court *sua sponte* raises the issue of whether it may exercise diversity jurisdiction in this matter, and will decide if jurisdiction exists in the context of the current Ex Parte Motion and the briefing ordered. In other words, Plaintiffs do not need to file a motion to remand if they believe ALM is properly joined.") and p. 4 ("**IT IS FURTHER ORDERED** that the Court will determine jurisdiction in the context of the Ex Parte Motion and the briefing ordered. Because the Court has *sua sponte* raised the issue of whether subject matter jurisdiction may be exercised in this case, further motions challenging jurisdiction shall not be filed.") (emphasis in original). Plaintiffs' arguments regarding ALM's joinder will be considered. No official action will be taken on the Motion to Remand at R. Doc. 20, which is not an active motion on the docket because it was not properly filed; however, remand would be improper on the basis that ALM's diverse citizenship has not been established since this Report and Recommendation recommends dismissal of Plaintiffs' claims against ALM as an improperly joined defendant.

[23] R. Doc. 23 (filed October 21, 2024). About two weeks after Amazon.com filed its Reply, and perhaps in response to the arguments raised there and in the current Motion, Plaintiffs filed their second state court Petition for Damages involving the same Incident, this time naming ALI and Missy Stoker as the only defendants. ALI removed the second suit to this Court on February 28, 2025 based on diversity jurisdiction. ALI was properly alleged to be a Delaware corporation with its principal place of business in Washington, and thus diverse from the Louisiana-domiciled Plaintiffs. ALI further contends that the non-diverse defendant, Stoker, is improperly joined, which is the subject of the pending Motion to Remand. *C. Robinson Enterprises, LLC, et al. v. Amazon Logistics, Inc., et al.*, No. 25-176, (M.D. La. Feb. 28, 2025), R. Doc. 1, ¶¶ 5-6, 28-31; R. Doc. 1-1 (Petition for Damages filed on November 4, 2024); R. Doc. 34. The cases were consolidated by Order, dated April 7, 2025. R. Doc. 24.

[24] *Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 377 (1994).

[25] *Williams v. Biomet Orthopedics, LLC,* No. 16-795, 2017 WL 3713529, at *2 (M.D. La. Mar. 31, 2017), report and recommendation adopted, No. 16-795, 2017 WL 4176480 (M.D. La. Sept. 21, 2017).

[26] *Garcia v. Koch Oil Co. of Texas Inc.*, 351 F.3d 636, 638 (5th Cir. 2003).

5

any time the court lacks subject matter jurisdiction.[27] The removal statute is strictly construed and any doubt as to the propriety of removal should be resolved in favor of remand.[28]

The improper joinder doctrine is a narrow exception to the rule of complete diversity.[29] If a non-diverse defendant is improperly joined, a district court can disregard the citizenship of that defendant for the purposes of evaluating its jurisdiction.[30] "The party seeking removal bears a heavy burden of proving that the joinder of the in-state party was improper."[31] In *Smallwood*, the seminal decision of the United States Court of Appeals for the Fifth Circuit on this issue, the Court "recognized two ways to establish improper joinder: '(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court.'"[32] Here, there has been no allegation of fraud in the pleading of jurisdictional facts. Rather, Defendants specifically argue improper joinder under the second method, *i.e.*, that Plaintiffs are unable to establish a cause of action against ALM.[33] Therefore, the question is whether Defendants have shown "that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant."[34] A court may resolve the issue of whether a plaintiff has a reasonable basis of

---

[27] *See* 28 U.S.C. § 1447(c).

[28] *Gasch v. Hartford Acc. & Indem. Co.*, 491 F.3d 278, 281-82 (5th Cir. 2007).

[29] *McDonal v. Abbott Laboratories,* 408 F.3d 177, 183 (5th Cir. 2005).

[30] *Williams v. Homeland Ins. Co. of New York,* 18 F.4th 806, 812 (5th Cir. 2021), citing *Flagg v. Stryker Corp.,* 819 F.3d 132, 137 (5th Cir. 2016).

[31] *Smallwood v. Illinois Cent. R. Co.*, 385 F.3d 568, 574 (5th Cir. 2004) (*en banc*).

[32] *Smallwood,* 385 F.3d at 573, quoting *Travis v. Irby*, 326 F.3d 644, 646-47 (5th Cir. 2003).

[33] R. Doc. 13-2, ¶¶ 5-6. Plaintiffs agree that the joinder inquiry in this case is governed by the second method. R. Doc. 20, p. 1.

[34] *Smallwood,* 385 F.3d at 573. *See also Williams,* 18 F.4th at 812 ("We typically evaluate this question by evaluating whether the plaintiff had any possibility of recovery against the non-diverse defendant in state court at the time of removal.") (citations omitted).

6

recovery under state law in one of two ways. "The court may conduct a Rule 12(b)(6) analysis, looking at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant. Ordinarily, if a plaintiff can survive a Rule 12(b)(6) challenge, there is no improper joinder."[35] "That said, there are cases, hopefully few in number, in which a plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder. In such cases, the district court may, in its discretion, pierce the pleadings and conduct a summary inquiry."[36] Claims against an improperly joined defendant should be dismissed without prejudice.[37]

### B. Arguments of the Parties

Plaintiffs' Complaint asserts that Defendants, *in globo*, "owned or maintained" DLB2, where the Incident took place.[38] The Complaint further asserts that Defendants, *in globo*, did not have any security personnel or measures at DLB2, and "Defendants failed to provide reasonably adequate security measures on their property including but not limited to not having a security guard and gate to get into their parking lot, and by not having a security guard or metal detectors at the entrance to the facility."[39] The Complaint asserts that, "[a]s a proximate result of Defendants' failure to provide reasonably adequate security measures, Plaintiffs lost his lucrative contract with ALI, costing Plaintiffs millions in lost revenues and profits and damaging Plaintiffs' reputation in the community."[40] Therefore, Plaintiffs' sole asserted cause of action in the Complaint against

---

[35] *Smallwood*, 385 F.3d at 573.

[36] *Id.*

[37] *See Montoya v. State Farm Mut. Auto. Ins. Co.*, No. 16-5, 2016 WL 5942327, at *3 (W.D. Tex. Oct. 12, 2016), citing *Int'l Energy Ventures Mgt., L.L.C. v. United Energy Group, Ltd.*, 818 F.3d 193, 210 (5th Cir. 2016) ("When a court determines a nondiverse party was improperly joined to defeat diversity, that party must be dismissed without prejudice.").

[38] R. Doc. 1-2, p. 2, ¶ 6.

[39] R. Doc. 1-1, pp. 2-3, ¶¶ 9, 11, 15-16.

[40] R. Doc. 1-2, p. 3, ¶ 16.

7

Defendants in the lead case is for lost revenue and profits, purportedly arising Defendants' failure to provide adequate security at DLB2.

In their proposed Second Amended Notice of Removal, Defendants argue that while Plaintiffs allege "Defendants" failed to provide adequate security, Plaintiffs have failed to allege any facts establishing that *ALM* had a duty to provide security, failed to allege facts regarding ALM's role in the Incident, and failed to allege why ALM would be liable to Plaintiffs. Defendants clarify that, as borne out by the Lease attached to the Motion, ALM is the lessor of DLB2.[41] Defendants contend that ALM's status as lessor of DLB2, standing alone, does not give rise to a plausible custodial liability claim.[42] Defendants argue that any attempts by Plaintiffs to amend their Complaint to state a claim against ALM would be futile because the Lease places security obligations on Amazon.com:

> **31. Security Service ["Security Service Provision,"** which is in reproduced in the NOR]. Tenant [*i.e.*, Amazon.com] acknowledges and agrees that Landlord [*i.e.*, ALM] is not providing any security services with respect to the Premises and that Landlord shall not be liable to Tenant for, and Tenant waives any claim against Landlord with respect to, any loss by theft or any other damage suffered or incurred by Tenant in connection with any unauthorized entry into the Premises by any third party or any other breach of security with respect to the Premises.[43]

Additionally, Defendants contend that Plaintiffs are foreclosed from alleging a breach of contract claim against ALM because there was no underlying contractual relationship between

---

[41] R. Doc. 13-2, ¶ 13 and R. Doc. 15, pp. 1, 42-43 ("Lease Agreement (DLB2….).")

[42] Defendants initially presumed that this was the basis for Plaintiffs' cause of action against ALM. R. Doc. 13-2, ¶ 13 and R. Doc. 23, p. 6, citing *Butler v. Denka Performance Elastomer LLC,* No. CV 18-6685, 2019 WL 2417500, at *4 (E.D. La. June 10, 2019) (considering the plaintiff's claim under La. Civ. Code Arts. 2317 and 2317.1 and reversing the grant of the plaintiff's motion for leave to amend the petition against the prior owner of a facility containing production units alleged to have caused harmful emissions because the plaintiff admitted that the new owner, not the prior owner, had custody of the units during the relevant time period). However, Plaintiffs did not specifically assert claims under Art. 2317 and Art. 2317.1, and therefore, they are not addressed in this Report and Recommendation.

[43] R. Doc. 13-2, ¶ 14; R. Doc. 15, p. 34; R. Doc. 23, pp. 6-7.

8

Plaintiffs and ALM, and Plaintiffs are foreclosed from alleging a tortious interference with contract claim against ALM under Louisiana law.[44] Defendants argue that the Complaint's generalized allegations of liability fail to survive a Rule 12(b)(6) analysis because they are mere conclusory statements which are not supported by factual allegations sufficient to raise a right to relief above the speculative level.[45]

In response, Plaintiffs argue that ALM's obligations flow from its ownership and status as a lessor of DLB2, and that ALM has a "non-delegable duty to keep [its] buildings and its appurtenances in repair so as to avoid unreasonable risk of injury to others...," relying on *Olsen v. Shell Oil Co.* and La. Civ. Code Art. 2322.[46] Plaintiffs contend that Defendants' improper joinder argument hinges on an indemnification provision in the Lease (*i.e.*, the Security Service Provision, above), but Plaintiffs are not parties to the Lease and do not seek relief under the Lease. Instead, according to Plaintiffs, whether ALM is entitled to indemnification from Amazon.com under the Lease "is premature and irrelevant to jurisdiction."[47] Rather, Plaintiffs have asserted negligence claims against ALM for failure to provide security, which they say should be determined by a jury after consideration of all the evidence and Louisiana's comparative fault regime, not by the Lease's terms. However, Plaintiffs also assert that, even if the Court were to consider the Security Service Provision, there are still questions of fact as to whether ALM knew or should have known about

---

[44] R. Doc. 13-2, ¶¶ 12, citing *Healthcare Mgmt. Servs., Inc. v. Vantage Healthplan, Inc.*, 32,523, p. 6 (La.App. 2 Cir. 12/8/99); 748 So.2d 580, 583 ("[T]here is no general duty based on public policy demands that a third person not interfere with a known contract relationship between others.").

[45] R. Doc. 13-2, ¶ 11.

[46] R. Doc. 20, p. 2, citing 365 So.2d 1285, 1292 (La. 1978). Article 2322 currently provides: "The owner of a building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice or defect in its original construction. However, he is answerable for damages only upon a showing that he knew or, in the exercise of reasonable care, should have known of the vice or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case."

[47] R. Doc. 20, p. 3.

9

the dangerous conditions at DLB2, which would defeat ALM's indemnity claim under La. R.S. 9:3221,[48] as well as questions regarding how broadly the indemnity provision should be construed. Plaintiffs assert that ALM is properly joined because Defendants cannot prove that there is no possibility that Plaintiffs can assert a valid cause of action against ALM.[49]

In Reply, Defendants assert that *Olsen*, Plaintiffs' only cited authority, is factually distinguishable because *Olsen* involved a "textbook" premises liability claim, involving a building owner's liability under Art. 2322 for a component part of its building that exploded and caused injury.[50] Defendants contend that, while Plaintiffs now allege in their Response that ALM breached its duty to "keep [its] buildings and its appurtenances in repair so as to avoid unreasonable risk of injury to others," that allegation was not alleged in Plaintiffs' Complaint.[51] Defendants further allege that Plaintiffs cannot plausibly allege a building owner liability claim against ALM under Art. 2322. Plaintiffs' only asserted claim is that Defendants, *in globo,* failed to provide adequate security measures and they have cited no authority for the proposition that the failure to provide adequate security is akin to ruin to a building caused by the owner's neglect to repair it or caused by a vice or defect in a building's construction. Citing several Louisiana federal and state

---

[48] La. R.S. § 9:3221 provides: "Notwithstanding the provisions of Louisiana Civil Code Article 2699, the owner of premises leased under a contract whereby the lessee assumes responsibility for their condition is not liable for injury caused by any defect therein to the lessee or anyone on the premises who derives his right to be thereon from the lessee, unless the owner knew or should have known of the defect or had received notice thereof and failed to remedy it within a reasonable time."

[49] R. Doc. 20, pp. 2-3.

[50] In *Olsen*, employees of a drilling contractor were living in a modular living unit owned by the contractor that was attached to a fixed platform owned by the defendant. The employees were injured by the explosion of a hot water heater in the unit, which was caused by a defective valve on the heater that the contractor failed to repair. The employees alleged liability claims against the owner of the platform under La. Civ. Code. Art. 2322. In answer to certified questions from the Fifth Circuit, the Louisiana Supreme Court found that the owner's platform was a building, to which the modular living unit was an appurtenant part, and platform owners have a duty under La. Civ. Code. Art. 2322 to keep their platforms and appurtenant living units in repair; are responsible to third persons for harm caused by defects in appurtenant living units; and cannot contract that liability away to their contractors. R. Doc. 23, pp. 2-3, citing 365 So.2d at 1288, 1291-92.

[51] R. Doc. 23, pp. 1-2.

court cases, Defendants argue that Art. 2322 was intended to apply to "the actual fall or collapse of a building or one of its components," or a "defective condition which causes a breaking or explosion of an appurtenance or component part."[52]  Defendants argue that the facts of this case are analogous to that of *Miguez v. Urban Developments, Inc*. There, Louisiana's Fifth Circuit Court of Appeal upheld the lower court's directed verdict for the defendants, a shopping mall and store owner, who were sued by the parents of a minor involved in an altercation near the store, finding that the defendants had no duty to provide security.[53]

Defendants point out that the Complaint does not allege any element of building owner liability, and only in their Response do Plaintiffs vaguely allege "dangerous, unsafe conditions" at DLB2; however, Plaintiffs do not allege that those conditions were caused by ALM's failure to provide security or that ALM was aware of those conditions.  Even if ALM were aware of such conditions, the Lease did not require ALM to provide security.[54]  Finally, the Complaint does not allege that Plaintiffs' harm was caused by a premises-related injury.  Rather, the Complaint alleges that *it was Robinson's altercation with the employee* that caused *ALI,* not ALM, to cancel Plaintiffs' contract.[55]

---

[52] R. Doc. 23, pp. 3-4, citing *Olsen*, 365 So.2d at 1293 and *e.g.*, *Davis v. Royal–Globe Ins. Companies,* 257 La. 523, 242 So.2d 839 (La. 1970); *Moczygemba v. Danos & Curole Marine Contractors, Inc.,* 561 F.2d 1149, 1151–52 (5th Cir. 1977) ("'Ruin' for purposes of Article 2322 means the fall or collapse of a substantial component of the structure resulting from a 'neglect to repair.'") and *Gines v. D.R. Horton, Inc., 8*67 F.Supp.2d 824, 832 (M.D. La. 2012) (holding that the plaintiff's inadequate heating and cooling system did not fit "within the parameters of 'ruin' as defined in article 2322," which same definition applied to Art.2762, the article at issue in that case).

[53] R. Doc. 23, p. 4, citing *Miguez v. Urb. Devs., Inc.,* 451 So.2d 614, 617 (La.App. 5 Cir. 1984), *writ denied,* 452 So.2d 1176 (La. 1984).  The *Miguez* court further noted, "Only when the owner or management of a business has knowledge, or can be imputed to have knowledge, of a third person's intended criminal conduct which is about to occur and which is within the power of the owner or management to protect against, does a duty of care toward a patron arise. *Davenport v. Nixon,* 434 So.2d 1203 (La.App. 1st Cir. 1983). The landowner or occupier of land does not insure against the possibility of an accident on the premises, but must act as a reasonable man in view of the probability of injury to others. *Barcia v. Estate of Keil,* 413 So.2d 241 (La. 4th Cir. 1982).").

[54] R. Doc. 23, pp. 5-6.

[55] R. Doc. 23, p. 2.

### C. Defendants Have Met Their Burden of Establishing That ALM Was Improperly Joined

In connection with this Motion, the parties have provided additional evidence that is not attached to the NOR or to the original Complaint, including the Lease Agreement between ALM and Amazon.com.[56] The Complaint generally alleges once that DLB2 "is owned or maintained by Defendants,"[57] and contains no specific factual allegations against ALM. However, Defendants assert that ALM is the owner and lessor of DLB2 and Amazon.com is the lessee.[58] Plaintiffs do not dispute these allegations.[59] Accordingly, this Report pierces the pleadings for purposes of the improper joinder analysis solely for the purpose of these facts.[60]

As mentioned, and as reproduced in the Motion, ALM disclaimed responsibility for providing security for DLB2, and disclaimed any liability to Amazon.com for any damages suffered by Amazon.com or any third party for any security breaches at DLB2 or the parking lot.[61] Plaintiffs acknowledge that they are not parties to the Lease, and Plaintiffs do not allege that there was any other written agreement between Plaintiffs and ALM in which ALM agreed to provide security for DLB2.[62] As there was no contract between ALM and Plaintiffs (or among any other

---

[56] R. Doc. 15.

[57] R. Doc. 1-2, p. 2, ¶ 6.

[58] R. Doc. 13-2, ¶ 13 and R. Doc. 23, pp. 1, 6.

[59] R. Doc. 20, p. 2.

[60] *Smallwood*, 385 F.3d at 573.

[61] R. Doc. 13-2, p. 14. In *Ellis v. Quiett*, 2019-0065 (La. 3/25/19); 266 So.3d 887, 888, the Louisiana Supreme Court found that the lessor/owner of a shopping center, whose lease provided, in part: "even though a portion of the Common Facilities Costs will be used to provide security services with respect to the Common Areas, Lessor does not assume any responsibility for security," did not contractually assume a duty to provide security for the parking lot where the plaintiffs were injured after visiting a nightclub on the property, and reinstated summary judgment in favor of the owner/lessor, dismissing the plaintiff's claims. *See* the facts of the case in the lower court's decision at *Ellis v. Quiett*, 2018-0110 (La.App. 1 Cir. 11/14/18); 2018 WL 5994602 (reversed as noted). Defendants rely heavily on this provision in the Motion, but this Report and Recommendation does not reach it because ALM is found to be improperly joined on other grounds.

[62] Plaintiffs have also not alleged a tortious interference with contract claim against ALM or any facts in support of such a claim, although Defendants' assertion that tortious interference with contract "is not cognizable under Louisiana

12

parties) requiring ALM to provide security to DLB2, the question is whether ALM, as lessor and owner of DLB2, had a legal duty under state law to provide security for DLB2.[63]

"When a case is removed to federal court on the basis of diversity jurisdiction, the *Erie* doctrine requires federal courts to apply substantive state law when adjudicating state law claims."[64] "Federal courts applying state law 'look to the final decisions of that state's highest court.' When…the state's highest court has not decided an issue, this court must make an '*Erie* guess' as to how the state supreme court would decide the issue."[65] "In doing so, this court should 'defer to intermediate state appellate court decisions, unless convinced by other persuasive data that the highest court of the state would decide otherwise.'"[66] Louisiana law is relied on by all parties, and is applied here.[67]

Plaintiffs' Complaint generally alleges that Defendants were negligent in failing to provide adequate security at DLB2, without reference to any particular law and without reference to any alleged building defects at DLB2;[68] therefore, the Complaint on its face fails to state a claim under La. Civ. Code art. 2322, which was raised for the first time as the basis for Plaintiffs' claim against

---

law" is not correct. Louisiana state courts and the Fifth Circuit have simply refused to extend the cause of action beyond the limited scope recognized by the Louisiana Supreme Court in *9 to 5 Fashions, Inc. v. Spurney*, 538 So.2d 228 (La. 1989).  R. Doc. 13-2, p. 5.  *See Harris Builders, L.L.C. v. URS Corp.,* 861 F. Supp. 2d 746, 750 (E.D. La. 2012) ("Louisiana law recognizes a very limited action for tortious interference with contract….Louisiana courts and the Fifth Circuit have consistently refused to extend the action for tortious interference beyond the limited scope recognized in *Spurney*.").

[63] Amazon.com's legal and/or contractual obligations are not currently at issue.

[64] *Williams,* 2017 WL 3713529, at *3 (citations omitted) and *see Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78 (1938).

[65] *Guilbeau v. Hess Corp.,* 854 F.3d 310, 311–12 (5th Cir. 2017), citing *Temple v. McCall*, 720 F.3d 301, 307 (5th Cir. 2013) (other citations omitted).

[66] *Guilbeau,* 854 F.3d at 312, citing *Temple*, 720 F.3d at 307 (other citations omitted).

[67] The Incident occurred in Louisiana, and no argument has been asserted that any other state's law applies.

[68] R. Doc. 1-2.

13

ALM in Plaintiffs' Response, by reference to the *Olsen* case.[69] Even if Plaintiffs were permitted to amend to attempt to allege a claim for premises liability under Art. 2322 against ALM on the strength of *Olsen* (or otherwise), the claim would still fail as *Olsen* (and Art. 2322) is not applicable to the facts of this case.

*Olsen* dealt with the explosion of a water heater caused by a defective valve that was located in a modular living unit. The living unit was found to be an appurtenant part of an offshore platform that the court considered a building. On these facts, the court found that the plaintiffs' claim of liability against the building owner fell within the ambit of Art. 2322.[70] As Defendants point out, Art. 2322 has been construed to apply to "the actual fall or collapse of a building or one of its components," or a "defective condition which causes a breaking or explosion of an appurtenance or component part."[71] Here, there are no allegations that DLB2 or any of its appurtenant parts collapsed or exploded resulting due to ruin caused by a vice or defect or a neglect in repairs, and Plaintiffs have not cited any support for the proposition that the lack of security at DLB2 is "ruin" as contemplated by Art. 2322. This conclusion is supported in *Wallon v. General Accident Insurance Company of America*, where the United States District Court for the Eastern District of Louisiana rejected the plaintiff's claim under Art. 2322, holding that the "failure of the

---

[69] R. Doc. 20, p. 2. In their Response, Plaintiffs also newly asserted that whether ALM is entitled to indemnity under La. R.S. § 9:3221 is irrelevant to jurisdiction (in response to Defendants' assertion that ALM disclaimed responsibility for providing security via the Security Service Provision). Notwithstanding that assertion, Plaintiffs still briefly addressed the statute. R. Doc. 20, pp. 2-3. La. R.S. § 9:3221 is not addressed here because it applies to injuries caused by "defects," which, like Art. 2322, has been construed to apply to building conditions, and not to a building's lack of security. *See, e.g., Dufrene v. Ins. Co. of State of Pennsylvania*, 01-47 (La.App. 5 Cir. 5/30/01), 790 So.2d 660, 670 (subsequent history omitted) (defects in handicap ramp) and *Plauche v. Bell,* 1998-2987 (La.App. 4 Cir. 5/3/00), 762 So.2d 130, 134 (defective gate).

[70] *See Moczygemba,* 561 F.2d at 1151 ("The existence of a 'building' and its 'ruin' are the threshold requirements of Article 2322. The Courts of Louisiana have interpreted Article 2322 broadly as encompassing necessary appurtenances to structures and to movables made immovable by attachment.")(citations omitted).

[71] *Davis,* 242 So.2d at 841-42; *Moczygemba,,* 561 F.2d at 1151–52 ("'Ruin' for purposes of Article 2322 means the fall or collapse of a substantial component of the structure resulting from a 'neglect to repair.'"); and *Gines,* 867 F. Supp. 2d at 832 (holding that the plaintiff's inadequate heating and cooling system did not fit "within the parameters of 'ruin' as defined in article 2322").

lessor to guard against acts of third persons is not a vice or defect in the premises so as to impose liability on the landlord."[72]

In addition to the fact that the requirements of Art. 2322 premises liability are not met based on the Incident that Plaintiffs allege caused their injury, Plaintiffs have not pointed to, and the undersigned has not found, any cases imposing liability on lessors for failure to provide security in a case involving damages arising out of termination of a contract, as opposed to a personal injury.

In the typical case, a plaintiff, who suffers a personal injury as the result of a tort that occurred on a third party's premises, contends that the injury could have been prevented if security had been provided. The injured plaintiff seeks damages against the operator of the establishment on the premises, as well as the building owners/lessors where the tort took place. Even those types of tort claims against lessors are sometimes unsuccessful because of the lessors' lack of knowledge of the risk that such a tort could take place on the premises.[73] However, the claims that have (at

---

[72] No. 90-155, 1991 WL 81820, at *4 (E.D. La. May 6, 1991), *aff'd sub nom. Wallon v. Gen. Acc. Ins.,* 947 F.2d 1488 (5th Cir. 1991) (rejecting the plaintiff lessee's Art. 2322 liability claim against the owner/lessor of her apartment after the lessee was assaulted by a third party), citing *Cornelius v. Hous. Auth. of New Orleans,* 539 So.2d 1250, 1252 (La. Ct. App.), *writ denied sub nom. Cornelius v. Hous. Auth. of New Orleans, Inc.,* 544 So.2d 404 (La. 1989) ("And furthermore Article 2322 does not apply to a 'failure to protect'. That is, failure of the lessor to guard against the acts of third persons is not a vice or defect in the premises so as to impose liability on the landlord.") (same citations omitted in both).

[73] *See e.g. Straughter v. Hodnett*, 42,827 (La.App. 2 Cir. 1/9/08), 975 So.2d 81, 85-86, 91-92, *writ denied sub nom. Straughter v. Hodnette,* 2008-0573 (La. 5/2/08), 979 So.2d 1286, in which the plaintiffs were patrons inside a bar who were attacked by another patron, and who brought negligence claims against the lessee/bar operator as well as the lessor/owner of the building containing the bar and the lessor/owner of the parking lot used by the bar patrons. The plaintiffs argued that the lessors of the building and parking lot should be held liable for the assault in the bar because the bar was a public nuisance, of which the lessors were aware. Rejecting this argument, Louisiana's Second Circuit Court of Appeal affirmed dismissal of the lessors, holding: "Although the owner or operator of a facility has the general duty to exercise reasonable care for the safety of persons on his premises and the duty not to expose such persons to unreasonable risks of injury or harm, this duty does not extend to unforeseeable or unanticipated criminal acts by third persons…While a business operator may have a duty to guard against the predictable risk of assaults, no jurisprudence has extended that duty to lessors. The duty of lessors to third parties is usually found in the ambit of premises defects [not shown here] and not in some obscure negligent leasing theory. The plaintiffs have simply failed to clearly articulate what duty they perceive was owed by [the lessors]." *See also Hodge v. Liquid Ventures,* No. 93-902 (La.App. 3 Cir. 3/2/94); 634 So.2d 1337, 1339 (The plaintiff, a night club patron, was injured in an altercation that took place in the parking lot of the shopping center where the club was located. The court rejected the plaintiff's

least) been permitted to proceed against lessors for failing to provide security are those involving a plaintiff claiming personal injuries arising from a tort on the premises, when the tortious act in question was reasonably foreseeable to the lessor.[74] So, if Robinson had been physically assaulted by the employee during the Incident and sought to hold ALM liable for Robinson's personal injuries caused by the employee due to ALM's failure to provide security and it was foreseeable to ALM that the assault could happen at DLB2, Robinson might be able to state a claim against ALM as the lessor of DLB2 under Louisiana law. Here, however, Plaintiffs (specifically, Robinson), does not allege that he suffered *personal injuries* for which ALM is liable due to its failure to provide security.[75] Rather, Plaintiffs allege that their damages arise out of the *termination of their contract with and by ALI*, not ALM, "months" after the Incident.[76] Furthermore, while Plaintiffs allege "Defendants knew or should have known that their failure to provide reasonably adequate security measures on their property could put individuals like Mr.

---

liability claims against the shopping center owner and its property management company for failure to provide security at the shopping center, and held: "At the outset, we observe that, as a matter of law, a landowner/lessor owes no duty to guests or invitees of its lessee, to protect them against misconduct of third persons in the absence of an assumed duty by the owner/lessor to provide security."). Here, it cannot be said that ALM assumed a duty to provide security, considering that it expressly disclaimed such a duty in the Security Service Provision. It is also difficult to fathom how ALM would have owed a duty to protect Robinson against the risk that Robinson would get into a verbal disagreement with an employee (that did not involve physical violence), which would then cause *Robinson* to go to his vehicle to retrieve *his firearm*, which would then cause Plaintiffs to lose their delivery service contract for violations of *ALI's* policies. Indeed, it would seem ALM would have even less of a duty if the employee involved in the Incident was an employee of Plaintiffs', as suggested by Defendants. *See* R. Doc. 13-2, ¶¶ 3, 8 and *see, e.g.*, R. Doc. 43, p. 2.

[74] *See, e.g., Patton v. Strogen,* 39,829 (La.App.2d Cir.8/17/05), 908 So.2d 1282, 1288, writ denied, 2005-2397 (La. 3/17/06), 925 So.2d 548 (in a wrongful death action, affirming the denial of summary judgment sought by the owner of a shopping mall plaza encompassing the parking lot of a fast food restaurant where the decedent was located when he was shot, and holding: "Whereas business owners are not the insurers of their patrons' safety, they do have a duty to implement reasonable measures to protect their patrons from criminal acts when those acts are foreseeable. *Posecai v. Wal–Mart Stores, Inc.,* 1999–1222 (La.11/30/99), 752 So.2d 762. However, there is generally no duty to protect others from the criminal activities of third persons. *Posecai,* citing *Harris v. Pizza Hut of Louisiana, Inc.,* 455 So.2d 1364, 1371 (La. 1984). This duty only arises under limited circumstances, when the criminal act in question was reasonably foreseeable to the owner of the business. *Id.*").

[75] R. Doc. 1-2, ¶ 16 (damages for loss of revenues and profits and loss of reputation arising from termination of contract).

[76] R. Doc. 1-2, p. 2, ¶ 6 and p. 3, ¶ 14. The Complaint expressly alleges that ALI terminated the contract and there are no allegations that ALM had any input into that decision.

Robinson at risk…,"[77] Plaintiffs have not plausibly claimed that it was foreseeable to ALM that Plaintiffs' contract would be terminated following any incidents for which security was necessary. Overall, Plaintiffs' allegations of negligence against ALM are too attenuated from their alleged injury, *i.e.*, ALI's termination of their contract months after Robinson's action in brandishing a firearm at DLB2, to state a claim against ALM sufficient to survive an improper joinder analysis.

As Defendants have met their heavy burden to show that ALM is improperly joined as a defendant, ALM should be dismissed from this case without prejudice. Following ALM's dismissal, complete diversity is adequately established between the remaining parties and this Court has subject matter jurisdiction because the amount in controversy is met. The Ex Parte Motion for Leave to File Second Amended Notice of Removal should be granted and the case referred to the undersigned for entry of a scheduling order.[78]

### III.    RECOMMENDATIONS

ALM is the owner and lessor of the facility and parking lot, DLB2, where the Incident giving rise to this suit arose. Plaintiffs cannot state a claim on the basis that the lack of security at DLB2 gives rise to liability under La. Civ. Code Art. 2322 against ALM because the failure to provide security is not a ruin in DLB2. Plaintiffs have otherwise failed to show that they can state a claim against ALM for damages arising from termination of their contract with ALI for ALM's alleged failure to provide security measures at DLB2 that is sufficient to withstand an improper joinder analysis. As ALM is improperly joined, ALM's citizenship does not need to be considered when determining subject matter jurisdiction under 28 U.S.C. § 1332, which is otherwise adequately established.

---

[77] R. Doc. 1-2, p. 3, ¶ 16.

[78] The previous scheduling conference was canceled pending resolution of subject matter jurisdiction. R. Doc. 11.

17

Accordingly,

**IT IS RECOMMENDED** that the claims of Plaintiffs C. Robinson Enterprises, LLC and Chad Robinson against Defendant ALM Baton Rouge, LLC be **DISMISSED WITHOUT PREJUDICE** from this case because ALM was improperly joined as a defendant.

**IT IS FURTHER RECOMMENDED** that the Ex Parte Motion for Leave to File Second Amended Notice of Removal,[79] filed by Defendant Amazon.com Services, LLC and ALM Baton Rouge, LLC, be **GRANTED**, and that the Clerk of Court be directed to docket the Second Amended Notice of Removal into the record of this matter, which will become the operative Amended Notice of Removal.[80]

**IT IS FURTHER RECOMMENDED** that the case be referred to the undersigned for entry of a scheduling order.

Signed in Baton Rouge, Louisiana, August 6, 2025.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

[79] R. Doc. 13.

[80] R. Doc. 13-2.