## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA

**C. ROBINSON ENTERPRISES, LLC, ET AL.**                    **CIVIL ACTION NO.**

**VERSUS**                                                   **24-512-JWD-EWD**

**ALM BATON ROUGE, LLC AND**                                 **LEAD**
**AMAZON.COM SERVICES, LLC**

*Consolidated with*

**C. ROBINSON ENTERPRISES, LLC, ET AL.**                    **CIVIL ACTION NO.**

**VERSUS**                                                   **25-176-JWD-EWD**

**AMAZON LOGISTICS, INC. AND**                               **MEMBER**
**MISSY A. STOKER**

### <u>NOTICE</u>

Please take notice that the attached Magistrate Judge's Report and Recommendation has been filed with the Clerk of the U.S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on January 16, 2026.

_____
**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

### UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **C. ROBINSON ENTERPRISES, LLC, ET AL.** | **CIVIL ACTION NO.** |
| **VERSUS** | **24-512-JWD-EWD** |
| **ALM BATON ROUGE, LLC AND**<br>**AMAZON.COM SERVICES, LLC** | **LEAD** |

*Consolidated with*

| | |
|---|---|
| **C. ROBINSON ENTERPRISES, LLC, ET AL.** | **CIVIL ACTION NO.** |
| **VERSUS** | **25-176-JWD-EWD** |
| **AMAZON LOGISTICS, INC. AND**<br>**MISSY A. STOKER** | **MEMBER** |

### <u>MAGISTRATE JUDGE'S REPORT, RECOMMENDATION, AND ORDER</u>

Before the Court is the Motion to Remand,[1] filed by C. Robinson Enterprises, LLC and Chad Robinson (together "Plaintiffs"), which is opposed by member case defendant, Amazon Logistics, Inc. ("ALI"), and lead case defendant, Amazon.com Services, LLC ("Amazon.com").[2] Because Plaintiffs' claims against the non-diverse defendant, Missy A. Stoker ("Stoker"), cannot withstand a Fed. R. Civ. P. 12(b)(6) analysis, it is recommended[3] that the Motion be denied and that Stoker be dismissed from this case without prejudice. If this Report and Recommendation is

---

[1] R. Doc. 34. Documents in the record of the lead case are referred to as "R. Doc. __." Documents in the record of the member case are referred to as "No. 25-176, R. Doc. __."

[2] R. Doc. 43.

[3] *See, e.g.*, *Davidson v. Georgia-Pacific, L.L.C.*, 819 F.3d 758, 765 (5th Cir. 2016) ("[A] motion to remand is a dispositive matter on which a magistrate judge should enter a recommendation to the district court subject to *de novo* review.").

adopted, the setting of a scheduling conference will be deferred until after the Court rules on the pending Motion to Compel Arbitration of Consolidated Actions, filed by Defendants.[4]

## I.    BACKGROUND

This is a civil action asserting claims for damages arising out of the termination of Plaintiffs' delivery service contract with ALI.    Plaintiffs filed two state court Petitions ("Complaints") asserting similar facts against different defendants, both of which were removed to this Court and consolidated. Civil Action No. 24-512, the lead case, removed Plaintiffs' May 9, 2024 state court Complaint filed against Amazon.com and Defendant ALM Baton Rouge, LLC ("ALM").[5]    ALM has since been dismissed as an improperly joined defendant, and diversity subject matter jurisdiction exists over the lead case.[6]    Civil Action No. 25-176 is the member case and it removed Plaintiffs' November 4, 2024 state court Complaint filed against ALI and its operations manager, Stoker.[7]    This Report and Recommendation is confined to the issue of whether Stoker, who appears to be a citizen of Louisiana, like Plaintiffs, was improperly joined.[8]

---

[4] R. Doc. 32.  The Motion to Compel Arbitration of Consolidated Actions asserts that the contract between Plaintiffs and ALI requires that Plaintiffs' breach of contract claims be arbitrated. Amazon.com is alleged to have no relationship to the contract or to the underlying dispute. *Id.* at p. 7. Plaintiffs and ALI are correct that the issue of the Court's subject matter jurisdiction over the member case, which involves ALI, must be determined before the Court rules on arbitration.  R. Doc. 32, p. 12 and R. Doc. 34-1, p. 2 and *see Hines v. Stamos,* 111 F.4th 551, 558 (5th Cir. 2024) ("We agree with Defendants that the district court was required to resolve threshold jurisdictional disputes before addressing arbitrability… motions to compel arbitration are not one of the limited instances in which district courts have leeway to pretermit the resolution of jurisdictional challenges.").

[5] R. Doc. 1-2, pp. 1-4.

[6] *See* R. Doc. 46, pp. 4, 5, 18-19 (referencing the pleadings, which allege that Plaintiffs are citizens of Louisiana and Amazon.com is a citizen of Delaware and Washington, and which allege damages for breach of the parties' ALI contract pursuant to which Plaintiffs allegedly earned annual revenues $2.8 million, and recommending dismissal of ALM, whose citizenship was unclear) and *see* R. Doc. 47 (Opinion adopting Report and Recommendations and dismissing ALM without prejudice).  While the lead case Complaint names Amazon.com (but not ALI) as a defendant, the allegations in the lead case Complaint all relate to ALI (as do the allegations in the member case Complaint). R. Doc. 1-2, pp. 2-3.

[7] No. 25-176, R. Doc. 1-1.

[8] Stoker has not appeared, and there is no proof of service in the record.  The parties' arguments regarding Plaintiffs' claims against ALM are mooted by the Court's Ruling dismissing ALM from these proceedings and are, therefore, not considered here. R. Doc. 47.

The facts asserted in the member case are very similar to the ones asserted in the lead case, as they all arise out of the same event (the "Incident"). Plaintiff C. Robinson Enterprises, LLC was an Amazon Delivery Service Partner ("DSP") that provided delivery services on behalf of ALI and worked out of a facility operated by ALI in Baton Rouge, Louisiana, which the parties refer to as "DLB2."[9]  In the lead case Complaint, Plaintiffs claim to have enjoyed "much success" with ALI, with average annual revenues of $2.8 million.[10]  Plaintiffs contend that DLB2 was a "high-risk and unsafe" environment at which physical assaults were not uncommon.  Plaintiffs claim that ALI was aware of the environment but did not provide security; rather, ALI relied on its loss prevention personnel, including its operations manager, Stoker,[11] to deter criminal activity at DLB2, although ALI allegedly instructed its personnel not to intervene in unsafe actions occurring outside of DLB2.  Plaintiffs allege that ALI did not permit firearms inside DLB2 but failed to install metal detectors.[12]

On May 11, 2023, Robinson conducted an employee meeting inside DLB2 during which an employee became unruly.[13] The employee flipped over a table and threatened Robinson. The employee refused to leave, so Robinson requested that one of his employees, the dispatcher, call the police because there was no security at DLB2.[14]  To diffuse the situation, Robinson left the building and "went to the only place he felt safe—his truck." Fearing for his safety and the safety of others, Robinson retrieved his firearm from his vehicle, which he holstered on his hip. The

---

[9] No. 25-176, R. Doc. 1-1, ¶¶ 2-3.  This Report and Recommendation also refers to the subject facility, as well as the parking lot where the Incident took place, as "DLB2."

[10] R. Doc. 1-2, ¶ 13.

[11] The parties acknowledge in their briefs regarding the Motion that Stoker was ALI's employee.  *See* R. Doc. 34-1, p. 6 (referring to ALI as Stoker's employer) and, R. Doc. 43, p. 3 (alleging that Stoker is an ALI employee).

[12] No. 25-176, R. Doc. 1-1, ¶¶ 4-5.

[13] No. 25-176, R. Doc. 1-1, ¶ 6. Plaintiff alleges that he had approximately 60 employees. *Id.* at ¶ 13.

[14] No. 25-176, R. Doc. 1-1, ¶¶ 6-7.

"enraged" employee then entered the parking lot, aggressively approached Robinson, and muttered "let's go." In response, Robinson put his hands near his firearm and the employee backed away, after which the police arrived.[15]  Months later, ALI notified Plaintiffs that their ALI contract was terminated effective immediately.[16]

After the police left, Stoker asked Robinson if he had a gun; Robinson confirmed that he did while in the parking lot. Stoker allegedly told Robinson that everything would be fine because ALI's policy only restricted weapons inside DLB2.  However, Stoker took Robinson's building access badge.  Thereafter, ALI investigated the incident, which Robinson alleges was a "sham." Robinson was instructed not to return to DLB2 and to manage his business remotely, which caused financial hardship.[17]   During this period, Plaintiffs hired an employee, Thaddeus Johnson ("Johnson"), whom Stoker deemed a "troublemaker." Stoker was allegedly upset about the hire, which Robinson did not discuss with her.[18]  Plaintiffs allege that, after Johnson's hire and during the investigation of the Incident, Stoker encouraged witnesses to change their statements from originally saying that none of the witnesses saw Robinson with a gun to saying that Robinson brandished a gun during the Incident.[19]  In July 2023, Robinson exchanged emails with Stoker, in which he expressed concerns about his financial losses from working remotely and rumors about his ALI contract being terminated.  Stoker reassured Robinson that the rumors were hearsay but that his employees' performance had declined, and his earnings had suffered due to working remotely.[20]   Plaintiffs allege that, while the investigation was pending, ALI changed its policies

---

[15] No. 25-176, R. Doc. 1-1, ¶ 7.

[16] No. 25-176, R. Doc. 1-1, ¶ 13.

[17] No. 25-176, R. Doc. 1-1, ¶¶ 8-9, 11.

[18] No. 25-176, R. Doc. 1-1, ¶ 9.

[19] No. 25-176, R. Doc. 1-1, ¶ 10.

[20] No. 25-176, R. Doc. 1-1, ¶¶ 3, 5, 8-11.

and erected signs in the parking lot, prohibiting weapons there, including in vehicles.  Plaintiffs contend that this change in policy led to the termination of their ALI contract on November 3, 2023.[21]

After the lead case Complaint against Amazon.com and ALM was removed on June 21, 2024, Plaintiffs filed the member case Complaint in state court on November 4, 2024 against ALI and Stoker.[22]  ALI removed the member case Complaint on February 28, 2025, and shortly thereafter it was consolidated with the lead case.[23]  The Notice of Removal of the member case adequately alleged that Plaintiffs are Louisiana citizens and that ALI is Delaware corporation with its principal place of business in Washington. The amount in controversy was established by the lead case Complaint, which features overlapping facts arising out of the same Incident, and alleged Plaintiffs' past ALI contractual revenue of $2.8 million.[24]  The Complaint only alleged that Stoker is a Louisiana resident, but the Notice of Removal assumed that she is a Louisiana citizen because ALI contended Stoker is improperly joined and Plaintiffs are manufacturing claims against Stoker in an effort to evade federal diversity jurisdiction.[25]  In support of this contention, ALI argues that Plaintiffs have no cause of action and/or fail to state a claim against Stoker on several grounds, primarily because Stoker owed no personal duties to Plaintiffs.[26]  However, the member case

---

[21] No. 25-176, R. Doc. 1-1, ¶¶ 12-13.

[22] No. 25-176, R. Doc. 1-1, p. 1.

[23] No. 25-176, R. Doc. 1, p. 1 and R. Doc. 7.

[24] No. 25-176, R. Doc. 1-1, introductory paragraph and R. Doc. 1, ¶¶ 28-29; 31.

[25] No. 25-176, R. Doc. 1, ¶¶ 5-6. Plaintiffs' filing of a new suit against a nondiverse defendant alleging similar claims arising out of the same Incident at issue in the lead Complaint, at the very least, raises suspicion as to whether Plaintiffs named Stoker to defeat diversity jurisdiction in the member case.

[26] No. 25-176, R. Doc. 1, ¶¶ 14-26.

Complaint asserted Stoker owed a duty to refrain from interfering with Plaintiffs' ALI contract, which she violated.[27]

To address Stoker's non-diverse citizenship, on April 21, 2025, the Court *sua sponte* ordered Plaintiffs to file either a motion to remand, if Plaintiffs believed they have a reasonable likelihood of recovery against Stoker, or an amended complaint deleting all claims against Stoker, if Plaintiffs agreed that she is improperly joined.[28]  The current Motion followed, which is opposed by Defendants.[29]  The Motion is fully briefed and oral argument is not necessary.

## II.    LAW AND ANALYSIS

### A.  Legal Standards

"Federal courts are courts of limited jurisdiction…It is to be presumed that a cause lies outside this limited jurisdiction…."[30] "Pursuant to 28 U.S.C. § 1332(a), this court has original jurisdiction "of all civil actions where (1) the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and (2) is between citizens of different States."[31] "The removing party has the burden of proving federal diversity jurisdiction.[32] Remand is proper if at any time the court lacks subject matter jurisdiction.[33] The removal statute is strictly construed and any doubt as to the propriety of removal should be resolved in favor of remand.[34]

---

[27] No. 25-176, R. Doc. 1-1, *see, e.g.,* ¶ 26.

[28] No. 25-176, R. Doc. 9.

[29] R. Docs. 34, 43.  Defendants' opposition is supported by Stoker's Declaration made under penalty of perjury. However, because it was not necessary to pierce the pleadings since the Complaint fails to state a claim under a Fed. R. Civ. P. 12(b)(6) analysis, Stoker's Declaration was not considered.

[30] *Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 377 (1994).

[31] *Williams v. Biomet Orthopedics, LLC,* No. 16-795, 2017 WL 3713529, at *2 (M.D. La. Mar. 31, 2017), report and recommendation adopted, No. 16-795, 2017 WL 4176480 (M.D. La. Sept. 21, 2017).

[32] *Garcia v. Koch Oil Co. of Texas Inc*., 351 F.3d 636, 638 (5th Cir. 2003).

[33] *See* 28 U.S.C. § 1447(c).

[34] *Gasch v. Hartford Acc. & Indem. Co*., 491 F.3d 278, 281-82 (5th Cir. 2007).

The improper joinder doctrine is a narrow exception to the rule of complete diversity.[35] If a non-diverse defendant is improperly joined, a district court can disregard the citizenship of that defendant for the purposes of evaluating its jurisdiction.[36] "The party seeking removal bears a heavy burden of proving that the joinder of the in-state party was improper."[37] In *Smallwood*, the seminal decision of the Fifth Circuit on this issue, the Court "recognized two ways to establish improper joinder: '(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court.'"[38] Here, there has been no allegation of fraud in the pleading of jurisdictional facts. Rather, the parties agree that the issue of improper joinder is properly decided under the second method, *i.e.*, whether Plaintiffs are unable to establish a cause of action against Stoker.[39] Therefore, the question is whether ALI has shown "that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant."[40] A court may resolve the issue of whether a plaintiff has a reasonable basis of recovery under state law in one of two ways. "The court may conduct a Rule 12(b)(6) analysis, looking at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant. Ordinarily, if a plaintiff can survive a Rule 12(b)(6) challenge, there is no improper joinder."[41]

---

[35] *McDonal v. Abbott Laboratories,* 408 F.3d 177, 183 (5th Cir. 2005).

[36] *Williams v. Homeland Ins. Co. of New York,* 18 F.4th 806, 812 (5th Cir. 2021), citing *Flagg v. Stryker Corp.,* 819 F.3d 132, 137 (5th Cir. 2016).

[37] *Smallwood v. Illinois Cent. R. Co.*, 385 F.3d 568, 574 (5th Cir. 2004) (*en banc*).

[38] *Smallwood,* 385 F.3d at 573, quoting *Travis v. Irby,* 326 F.3d 644, 646-47 (5th Cir. 2003).

[39] R. Doc. 25-176, R. Doc. 1, ¶¶ 7-8; R. Doc. 34-1, p. 3 and R. Doc. 43, pp. 5-6.

[40] *Smallwood,* 385 F.3d at 573. *See also Williams,* 18 F.4th at 812 ("We typically evaluate this question by evaluating whether the plaintiff had any possibility of recovery against the non-diverse defendant in state court at the time of removal.") (citations omitted).

[41] *Smallwood*, 385 F.3d at 573.

"That said, there are cases, hopefully few in number, in which a plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder. In such cases, the district court may, in its discretion, pierce the pleadings and conduct a summary inquiry."[42] If the plaintiff cannot survive the Rule 12(b)(6) challenge, the claims against the improperly joined defendant should be dismissed without prejudice.[43]

## B. Defendants Have Met Their Burden of Establishing that Stoker Was Improperly Joined

"When a case is removed to federal court on the basis of diversity jurisdiction, the *Erie* doctrine requires federal courts to apply substantive state law when adjudicating state law claims."[44] The member case Complaint alleges causes of action against Stoker under Louisiana law, including Louisiana's Unfair Trade Practices Act ("LUTPA"), negligence, fraud, tortious interference with Plaintiffs' contractual relationship with ALI, and conspiracy.[45] These claims are also addressed in the Motion,[46] sometimes on factual grounds that differ from those alleged in the Complaint.

---

[42] *Id.*

[43] *See Montoya v. State Farm Mut. Auto. Ins. Co.*, No. 16-5, 2016 WL 5942327, at *3 (W.D. Tex. Oct. 12, 2016), citing *Int'l Energy Ventures Mgt., L.L.C. v. United Energy Group, Ltd.*, 818 F.3d 193, 210 (5th Cir. 2016) ("When a court determines a nondiverse party was improperly joined to defeat diversity, that party must be dismissed without prejudice.").

[44] *RPM Pizza, LLC v. Argonaut Great Cent. Ins. Co.*, Nos. 10-684, 12-147, 2013 WL 1296678, at *2 (M.D. La. Mar. 28, 2013) (order amended on rehearing on a different issue), citing *LeMeilleur v. Monumental Life Ins. Co.*, 419 Fed.Appx. 451, 453 (5th Cir. 2011) and *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

[45] No. 25-176, R. Doc. 1-1, pp. 5-8. Plaintiffs also allege that ALI violated Art. I, Section II of the Louisiana Constitution, which guarantees the right to bear arms, when ALI began prohibiting firearms in the parking lot of DLB2 after the Incident and then terminated Plaintiffs' contract for violation of that policy. *Id.*

[46] R. Doc. 34, pp. 8-12.

1. *Canter* Does Not Apply To Plaintiffs' Negligence Claim Because Plaintiffs Do Not Assert Claims for Bodily Injuries and Stoker Cannot Be Held Personally Liable for Negligent Acts or Omissions Committed In the Course of Her Employment.

Both parties argue for the application of *Canter v. Koehring*.[47] There, the Louisiana Supreme Court held that an employee could only be held personally liable for injuries to third persons where: (1) the employer owed a duty of care to the third person, breach of which caused the damage for which recovery is sought; (2) that duty was delegated by the employer to the defendant; (3) the defendant employee breached his duty through personal (not technical or vicarious) fault; and (4) the employee had a personal duty toward the injured third party, the breach of which specifically caused the third party's damages.[48] The Fifth Circuit has held that, "*Canter* liability to third persons for the negligence of corporate officers and employees may only be imposed for bodily injury claims."[49]  Because this case does not involve a claim for bodily injury

---

[47] 283 So.2d 716, 720-21 (La. 1973) and *see* R. Doc. 34-1, pp. 4-6, which argues both for and against application of *Canter* (although it appears that Plaintiffs' argument explaining the "limited reach of *Canter*" in the middle of page 5, *i.e.*, "neither *Canter* nor the cases it relied on…") is supposed to be a reference to *Kling Realty Co., Inc. v. Chevron USA, Inc.*, 575 F.3d 510, 514 (5th Cir. 2009)) as discussed by this Court in *Dugas v. Dow Chemical*, No. 10-833, 2011 WL 7068924 (M.D. La. Oct. 24, 2011), and *see* R. Doc. 43, pp. 7-11. Plaintiffs rely on *Dugas* for the proposition that *Kling Realty Co.* does not limit application of *Canter* only to personal injury cases. However, *Kling Realty Co.* clearly holds that *Canter* does not apply to cases that only involve economic damages, and that case did not draw the distinctions made in *Dugas*. This Court cannot reject the application of *Kling Realty Co.* to this case because it is governing Fifth Circuit precedent. Further, the Louisiana Supreme Court has not rejected *Kling Realty Co.* or reached a contrary result. *Dugas* also relies on *Anderson & Broussard, L.L.P. v. Bellsouth Corp.*, No. 04-2408, 2005 WL 2406156 (W.D. La. 2005), which pre-dates the Fifth Circuit's holding in *Kling Realty Co.*  Notably, in cases that both pre-date and post-date *Dugas*, the same division of this Court that decided *Dugas* followed *Kling Realty Co.* and held that *Canter* does not apply to cases that involve only economic injuries.  *See Matthews v. Bancorpsouth Bank*, No. 09-910, 2010 WL 797790-JJB (M.D. La. Mar. 1, 2010) (accord) and *Phillips v. JPMorgan Chase Bank, N.A.*, No. 16-564, 2017 WL 3045865-JJB (M.D. La. May 8, 2017), report and recommendation adopted, No. 16-564, 2017 WL 3037797 (M.D. La. July 18, 2017) (accord). To the extent they conflict, *Matthews* and *Phillips* are adopted as the better reasoned opinions. Furthermore, this division of the Court has refused to apply *Canter* in a case involving only economic injuries, relying on *Kling Realty Co*. *See Hoffman v. Ellender*, 2015 WL 4873342, at *6 (M.D. La. July 23, 2015), report and recommendation adopted, No. 15-309, 2015 WL 4873350 (M.D. La. Aug. 13, 2015) (deGravelles, J.). Here, Plaintiffs' claims are for the termination of a service contract against a company and its manager for strictly economic losses, which falls outside of *Canter* per *Kling Realty Co.*

[48] *Phillips*, 2017 WL 3045865 at *7 citing *Kling Realty Co., Inc.*, 575 F.3d at 514 (citing *Canter*, 283 So.2d at 720-21 (La. 1973)).

[49] *Phillips*, 2017 WL 3045865, at *7, citing *Kling*, 575 F.3d at 515 (citing *Unimobil 84, Inc. v. Spurney*, 797 F.2d 214, 217 (5th Cir. 1986)).  As this Court recognized in *Matthews*, 2010 WL 797790, at *6, n.9 ("It should be noted that the U.S. Fifth Circuit, in both *Unimobil* and *Fine Iron Works*, considered and rejected the extension of *Canter* beyond the realm of personal physical injury.").

and only involves claims for economic injuries, Plaintiffs cannot state a claim for relief against Stoker for negligence under the *Canter* framework.[50]

Furthermore, the Complaint's cause of action for "Negligence" does not assert any specific allegations that Stoker was personally negligent or that Stoker personally breached a duty to Plaintiffs; rather, the Complaint only generally alleges omissions by, and breaches of duty of "Defendants," all of which apply to security obligations potentially owed by ALI as the operator of DLB2, not Stoker.[51] The portion of the Motion regarding negligence also does not point to any specific negligent conduct by Stoker; rather, the Motion only refers to Stoker tortiously interfering with Plaintiffs' ALI contract, addressed below.[52]

To the extent the Complaint's references to Stoker's conduct in asking witnesses to change their statements as part of the investigation and Stoker's conversations with Robinson regarding the Incident and Johnson's hire could be construed as assertions of Stoker's negligent conduct, the claim still fails. Generally, Louisiana law does not provide third parties with a cause of action against corporate directors, officers, and employees for negligence, mismanagement, breach of fiduciary duty, or for debts of the corporation. "Officers, employees and agents owe no duties to third parties, and cannot be found liable to third parties for their negligent acts and omissions in a

---

[50] *Phillips,* 2017 WL 3045865, at *7, citing *Roy Supply Co., Inc. v. Capital One Financial Corp.*, No. 16-11349, 2016 WL 4362156, at *4 (E.D. La. Aug. 16, 2016). *See also QBE Specialty Ins. Co. v. Ecolab, Inc.,* No. 12-782, 2014 WL 1330302, at *2 (M.D. La. Mar. 31, 2014) ("The Court agrees that an employee acting in the course and scope of his employment cannot hold personal liability to a third-party plaintiff where there are only non-bodily injuries alleged. Where the only injuries alleged are either economic or emotions in nature, there is no basis for recovery under Louisiana law, as it is interpreted by the Fifth Circuit."), citing *Kling Realty*, 575 F.3d at 515, and *Hibernia Community Development Corp., Inc., v. U.S.E. Cmty. Servs. Grp., Inc.,* 166 F. Supp. 2d 511, 515 (E.D. La. 2001) ("…*Canter* 'applies only to bodily injury claims and does not apply to claims arising in a commercial setting.'").

[51] No. 25-176, R. Doc. 1-1, pp. 5-6, ¶¶ 17-21 (alleging that "Defendants" failed to have proper security in and around the facility; failed to provide a safe working environment, failed to exercise reasonable and ordinary care, *etc.*; "Defendants" owed a duty to Plaintiffs to use reasonable care; and "Defendants" breached the duty of care).

[52] R. Doc. 34, p. 1 and *see* R. Doc. 43, pp. 8-9. The Complaint's only allegation of a particular duty owed by Stoker is in connection with the tortious interference claim. No. 25-176, R. Doc. 1-1, ¶ 26.

commercial context."[53] Further, "personal liability cannot be imposed upon the employee simply because of his general administrative responsibility for some function of employment."[54] "Officers may, however, be liable in their personal capacity for fraudulent acts committed in the course of their employment."[55] "[U]nder Louisiana law, a corporate officer/director ... acting on behalf of a corporation and within the scope of his/her duties is not liable to third parties in a commercial context, except in cases of fraud or intentional interference with a contract."[56]

Here, Stoker's discussions of the Incident and the hiring of Johnson with Robinson and alleged requests to witnesses to change their statements during the investigation, are alleged to have occurred while Stoker acted in her capacity as an ALI employee, rather than in her personal capacity; as such, they are not actionable as negligence claims.[57] Plaintiff fails to state a negligence claim against Stoker sufficient to withstand a Rule 12(b)(6) analysis.

> 2. There is No Reasonable Basis for the Court to Predict That Plaintiffs Will Be Able to Recover Against Stoker for Fraud, LUTPA, Tortious Interference with Contract, or Conspiracy

Fraud

Relying on Article 1953 of the Louisiana Civil Code, the Complaint alleges that "Defendants" engaged in fraud when they caused witnesses to change their witness statements to

---

[53] *Phillips*, 2017 WL 3045865, at *7, citing *Korson v. Independence Mall I, Ltd.*, 595 So.2d 1174, 1178 (La.App. 5 Cir. 1992) (citing *Unimobil 84, Inc.,* 797 F.2d at 215).

[54] *Phillips*, 2017 WL 3045865, at *7 citing *Kling Realty Co., Inc.*, 575 F.3d at 514 (citation omitted).

[55] *Phillips*, 2017 WL 3045865, at *7 citing *Conerly Corp. v. Regions Bank*, No. 08-813, 2008 WL 4975080, at *4 (E.D. La. Nov. 20, 2008) (citing *Unimobil 84, Inc.*, 797 F.2d at 217).

[56] *Phillips*, 2017 WL 3045865, at *7 citing *Matthews*, 2010 WL 797790, at *6 (citing cases). As discussed, below, Plaintiff does not allege that Stoker is an officer or director of ALI.

[57] While Plaintiffs reference *9 to 5 Fashions, Inc. v. Spurney*, 538 So.2d 228 (La. 1989) as the basis for their negligence claims (R. Doc. 34-1, p. 11), that case is the seminal case in Louisiana addressing a cause of action for intentional interference with a contract. In fact, *Spurney* notes that corporate officers are immune from liability for negligent contractual interference. *Spurney*, 538 So.2 d at 232. Plaintiffs' claims for fraud and intentional interference with a contract are addressed below.

"incorrectly" state that Robinson "brandished" and/or "pulled" a gun in the parking lot of DLB2,[58] as part of an unfair investigation by "Defendants" which led to the termination of Plaintiffs' ALI contract.[59]   The Complaint alleges this occurred after Plaintiffs hired Johnson, whom Stoker believed to be a "troublemaker." The Motion reiterates the foregoing but attributes these actions specifically to Stoker.[60]

Fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may also result from silence or inaction.[61] Fraud must be alleged with particularity, specifying the time, place, and contents of the false misrepresentation, as well as the identity of the person making the misrepresentation and why the statements were fraudulent.[62]

Here, while the Complaint alleges that Stoker engaged in fraud when she instructed witnesses to change their statements as part of the investigation, the Complaint does not allege that *Stoker* specifically misrepresented any material fact regarding the statements, or anything else, *to Plaintiffs,* or that Stoker received any benefit from the changed witness statements. Instead, the facts allegedly misrepresented were *by the witnesses*, when they stated that Robinson brandished a gun in the parking lot.[63] However, and as ALI points out, that allegation is not actually a

---

[58] No. 25-176, R. Doc. 1-1, ¶¶ 10, 25.

[59] No. 25-176, R. Doc. 1-1, ¶ 25 and *see id.* at ¶ 9 ("Shortly thereafter, Mr. Robinson was advised that **AMAZON** was investigating the incident.") and ¶ 10 ("…**Defendants** commenced an unfair, sham investigations, as detailed herein.") (emphasis added in both).

[60] R. Doc. 34-1, pp. 11-12.

[61] La. Civ. Code Ann. art. 1953.

[62] *Phillips*, 2017 WL 3045865, at *9, citing *Williams v. WMX Technologies, Inc.*, 112 F.3d 175, 177-78 (5th Cir. 1997).

[63] No. 25-176, R. Doc. 1-1, ¶ 10; R. Doc. 34-1, pp. 11-12; R. Doc. 43, p. 13.

misrepresentation based on Plaintiffs' own assertions.[64]  Plaintiffs admit that Robinson went to his truck, retrieved his gun, holstered it on his hip, and assumed a defensive position with his hand near the holstered gun in the parking lot.[65]  Thus, Plaintiffs' fraud claim against Stoker lacks an essential element because there was no underlying misrepresentation *by Stoker*.

Plaintiffs' allegation of a fraudulent investigation, *in globo*, lacks the required details under Rule 9(b), including a specific allegation in the Complaint that *Stoker* was involved in it.[66]  Rather, Plaintiffs specifically pleaded that ALI investigated the Incident.[67]  Plaintiffs also fail to provide any specifics regarding what was misrepresented to them by Stoker regarding this investigation, where her misrepresentation occurred, and what she allegedly obtained from the fraudulent behavior.[68]  Accordingly, Plaintiffs fail to state a fraud claim sufficient to withstand a Rule 12(b)(6) challenge.

LUTPA

The Complaint alleges that "Defendants" violated the LUTPA by requiring Plaintiffs to work remotely during the investigation, which resulted in different treatment as compared to other

---

[64] One definition of "brandished" is "to exhibit in an ostentatious or aggressive manner." www.merriam-webster.com/dictionary/brandish.

[65] No. 25-176, R. Doc. 1-1, ¶ 7.

[66] No. 25-176, R. Doc. 1-1, ¶¶ 9-10 (referencing "Defendants" conducting the investigation). While Plaintiffs allege that Stoker spoke to Robinson while the investigation was pending, the Complaint does not specifically allege that Stoker was involved in the investigation.

[67] No. 25-176, R. Doc. 1-1, ¶ 9.

[68] *Phillips,* 2017 WL 3045865, at *9, citing *Cooper v. Primary Care Solutions, Inc.*, No. 16-259, 2017 WL 1086186, at *8 (M.D. La. Mar. 21, 2017) (dismissing plaintiffs' claims under LUTPA because plaintiffs did not allege fraud with the particularity required by Fed. R. Civ. P. 9(b)); *see also Adams v. Chase Bank*, No. 11-3085, 2012 WL 2122175, at *3 (N.D. Tex. May 11, 2012) (finding no reasonable basis to predict that plaintiff might recover on his fraud claim because "a claim for fraud requires a misrepresentation by a defendant to a plaintiff. Plaintiff has not alleged any representations by Brice that could arguably form the basis of a fraud claim.") (internal citation omitted); *Vinewood Capital, LLC v. Sheppard Mullin Richter & Hampton LLP*, No. 09-2459, 2010 WL 1267237, at *4 (N.D. Tex. Apr. 2, 2010) (concluding a defendant was improperly joined with respect to plaintiff's fraud claim because plaintiff failed to allege that the defendant made any false representation and the undisputed evidence showed the defendant played no role in the settlement negotiations in which the alleged fraud occurred). *See also* R. Doc. 43, p. 13.

ALI service partners, and by unfairly punishing Robinson when it terminated his ALI contract, despite that Robinson followed ALI's prior policy that permitted weapons in the parking lot.[69] The Motion, however, asserts that Stoker violated LUTPA based on the same acts alleged in support of the fraud claim, *i.e.*, that Stoker instructed the witnesses to change their statements to state that Robinson had a gun in the parking lot as part of a sham investigation.[70]

LUTPA provides, in pertinent part: "Any person who suffers any ascertainable loss of money or movable property, corporeal or incorporeal, as a result of the use or employment by another person of an unfair or deceptive method, act, or practice declared unlawful by R.S. 51:1405, may bring an action individually…to recover actual damages."[71] LUTPA prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."[72] It affords a private right of action to "[a]ny person who suffers any ascertainable loss" as a result of the unlawful conduct.[73] To recover, the plaintiff must "prove some element of fraud, misrepresentation, deception or other unethical conduct."[74]

"What constitutes an unfair trade practice is determined by the courts on a case-by-case basis."[75] But a court should find a practice "unfair under the statute only when" the practice "offends established public policy and is immoral, unethical, oppressive or unscrupulous."[76] "[T]he range of prohibited practices under LUTPA is extremely narrow and includes 'only

---

[69] No. 25-176, R. Doc. 1-1, ¶¶ 14-15.

[70] R. Doc. 34-1, pp. 9-10.

[71] La. R.S. § 51:1409.

[72] *IberiaBank v. Broussard,* 907 F.3d 826, 839 (5th Cir. 2018), citing La. R.S. § 51:1405(A).

[73] La. R.S. § 51:1409(A).

[74] *IberiaBank,* 907 F.3d at 839–40, citing *Tubos de Acero de Mexico, S.A. v. Am. Int'l Inv. Corp.*, 292 F.3d 471, 480 (5th Cir. 2002) (quoting *Omnitech Intern., Inc. v. Clorox Co.,* 11 F.3d 1316, 1332 (5th Cir. 1994)).

[75] *IberiaBank,* 907 F.3d at 839 citing *id.*

[76] *IberiaBank,* 907 F.3d at 839, citing *id* (quoting *Computer Mgmt. Assistance Co. v. Robert F. DeCastro, Inc.*, 220 F.3d 396, 404 (5th Cir. 2000)).

egregious actions involving elements of fraud, misrepresentation, deception, or other unethical conduct.'"[77] The "defendant's motivation" is a critical factor—his "actions must have been taken with the specific purpose of harming the competition."[78]

The Complaint fails to allege any conduct by Stoker that rises to the level of a LUTPA violation. The Complaint does not allege that Stoker had the authority to require Plaintiffs to work remotely or that she made that decision. The Complaint fails to allege a sufficient nexus between any act by Stoker and the harm suffered by Plaintiffs—termination of their ALI contract. Plaintiffs do not specifically allege that Stoker had the authority to terminate Plaintiffs' ALI contract; rather, the fact section of the Complaint specifically states that Plaintiffs attended a Zoom meeting with the ALI Management team, and at that meeting ALI terminated their ALI contract, because Robinson possessed a gun in the parking lot—which he admits.[79] There is also no allegation that Stoker had the motivation to harm Plaintiffs' business. Similar to the deficient fraud claim above, the Complaint also fails to set forth the particulars required under Rule 9(b) of time, place, and contents of Stoker's alleged false representations underlying a LUTPA claim, as well as what benefit(s) she purportedly obtained.[80]

---

[77] *IberiaBank,* 907 F.3d at 839, citing *Monroe v. McDaniel*, No. 16-214, 16-214 (La.App. 5 Cir. 12/7/16), 207 So.3d 1172 (quoting *Cheramie Servs., Inc. v. Shell Deepwater Prod., Inc.*, No. 2009-C-1633 (La. 4/23/10), 35 So.3d 1053, 1060).

[78] *IberiaBank,* 907 F.3d at 839, citing *Monroe*, 207 So.3d at 1180.

[79] No. 25-176, R. Doc. 1-1, ¶ 7 ("[At his truck], [Robinson] lawfully retrieved a firearm and holstered it. Shortly after Mr. Robinson holstered his firearm, the enraged employee exited the building with a backpack and aggressively approached Mr. Robinson muttering 'let's go' in a threatening manner. Mr. Robinson took a defensive position and did the defensive act of placing his hands on his hip near his holster…"), ¶ 8 ("Defendant Missy Stoker, asked Mr. Robinson if he had a gun in the parking lot. Mr. Robinson confirmed to the operations manager that he did have a gun on his person while in the parking lot…"), ¶ 12 ("This subsequent 180-degree policy change by [ALI] [of weapons prohibited in the parking lot] was apparently relied upon by [ALI] in their decision to suddenly terminate Mr. Robinson's lucrative business agreement with [ALI]"); ¶ 13 ("On November 3, 2023, Mr. Robinson received a meeting invite via email from the regional [ALI] Management team. During the zoom call, Mr. Robinson was informed that [ALI] would be terminating their contract with his company effective immediately.") (emphasis in original).

[80] *Cooper*, 2017 WL 1086186, at *8 (citations omitted).

The Motion's alternative allegation that Stoker violated LUTPA by telling the witnesses to change their statements during the investigation also fails. Even if Stoker had given this directive, such conduct is not egregious in this case. The witnesses' statements, as alleged by Plaintiffs, were accurate regarding Robinsons' admitted possession of a gun in the parking lot of DLB2 during the Incident.[81] Plaintiffs fail to state a LUTPA claim sufficient to withstand a Rule 12(b)(6) challenge.

<u>Tortious Interference With Contract</u>

The Complaint alleges that "a corporate officer like Stoker had a duty" to refrain from tortiously interfering with Plaintiffs' ALI contract, which occurred during the sham investigation that resulted in the termination of Plaintiffs' ALI contract, including Stoker's alleged request for the witnesses to change their statements.[82] This is the only duty Plaintiffs specifically attribute to Stoker in the Complaint. The Motion contains similar allegations.[83]

"In 1989, the Louisiana Supreme Court first recognized the cause of action for intentional interference with a contract in *9 to 5 Fashions, Inc. v. Spurney* ... However, the cause of action that the state's highest court recognized was extremely limited."[84] "The court recognized 'only a corporate officer's duty to refrain from intentional and unjustified interference with the contractual relation between his employer and a third person.'"[85] "The court laid out the elements of this cause of action:

> (1) the existence of a contract or a legally protected interest between the plaintiff and the corporation; (2) the corporate officer's

---

[81] *See* R. Doc. 43, pp. 11-12.

[82] No. 25-176, R. Doc. 1-1, ¶ 26.

[83] R. Doc. 34-1, p. 9.

[84] *Petrohawk Props., L.P. v. Chesapeake Louisiana, L.P.,* 689 F.3d 380, 394 (5th Cir. 2012), citing *Spurney*, 538 So.2d at 232–34.

[85] *Petrohawk Props., L.P.,* 689 F.3d at 394-95, citing *id.*

> knowledge of the contract; (3) the officer's intentional inducement
> or causation of the corporation to breach the contract or his
> intentional rendition of its performance impossible or more
> burdensome; (4) absence of justification on the part of the officer;
> (5) causation of damages to the plaintiff by the breach of contract or
> difficulty of its performance brought about by the officer.[86]

The Fifth Circuit has recognized "the limited nature of Louisiana's claim for tortious interference with a contract," and has held that, based on the case law, "*9 to 5* requires that the defendant owe a duty to the plaintiff in order for the plaintiff to have a viable claim for tortious interference with a contract."[87]   In *Hibernia Community. Development Corp., Inc.,* the United States District Court for the Eastern District of Louisiana held that Louisiana law does not permit a cause of action for tortious interference with a contract against anyone other than an officer of a corporation, citing several other decisions that declined to expand liability for tortious interference with a contract beyond a corporate officer.[88] This Court has held similarly.[89]   Here, and despite Plaintiffs' allegation in the Complaint referencing "a corporate officer like Mrs. Stoker," all parties agree that

---

[86] *Petrohawk Props., L.P.,* 689 F.3d at 395, citing *id.*

[87] *Petrohawk Props., L.P.,* 689 F.3d at 395-96, citing *American Waste & Pollution Control Co. v. Browning–Ferris, Inc.,* 949 F.2d 1384 (5th Cir. 1991) and *Egorov, Puchinsky, Afanasiev & Juring v. Terriberry, Carroll & Yancey,* 183 F.3d 453 (5th Cir. 1999).

[88] *Hibernia Community Development Corp., Inc., v. U.S.E. Cmty. Servs. Grp., Inc.,* 166 F.Supp.2d 511, 514 (E.D. La. 2001), citing *Medx, Inc. of Florida v. Ranger,* Civ. A. No. 91–3099, 1993 WL 21250, *3 (E.D. La. Jan 25, 1993) (granting summary judgment in favor of defendant in tortious interference with contract suit because the defendant was not an officer); *Endotech USA v. Biocompatibles Intern. PLC,* No. 00–957, 2000 WL 1594086, *13 (E.D. La. Oct 24, 2000) (stating that tortious interference with business relations, "unlike the contractual interference cause of action, is not restricted to officers of corporations"); *Commercial Capital Holding Corp. v. Team Ace Joint Venture,* No. 99-3040, 2000 WL 959709 (E.D. La. Jul 11, 2000).

[89] *See, e.g., Beta Tech., Inc. v. State Indus. Prods. Corp.,* No. 06-735, 2008 WL 11351462, at *1 (M.D. La. Sept. 24, 2008) ("The cause of action for intentional interference with contractual rights arises out of a corporate officer's duty not to intentionally interfere with the contractual relationship between his employer and those with whom his employer contracts. Therefore, the claim can only be brought against a corporate officer.") (citing *Spurney,* 538 So.2d 228 and *Hibernia Community Development Corp., Inc.,* 166 F.Supp.2d at 514). *See also* R. Doc. 43, p. 14, citing *Hawkins v. Decuir, Clark, & Adams, LLP,* 2016-1338, 2017 WL 3528872, at *11 (La.App. 1 Cir. 8/16/17) (affirming ruling that plaintiff failed to state a cause of action against the general counsel for the Board of Supervisors for Southern University for tortious interference with contract because she was not a corporate officer, and noting "[a]ttempts by the courts of Louisiana to expand on the limited doctrine recognized in **9 to 5 Fashions** by allowing the claim against a non-corporate officer have been met with reversal by the supreme court.") (emphasis in original).

Stoker is an operations manager, *i.e.*, an ALI employee.[90] Accordingly, as Stoker is not an officer of ALI, Plaintiffs fail to state a claim for tortious interference with contract against Stoker sufficient to withstand a Rule 12(b)(6) challenge.

Conspiracy

Citing Article 2324 of the Louisiana Civil Code, the Complaint alleges "Defendants" conspired to end Plaintiffs' business relationship with ALI, "whether due to Mrs. Stoker's disagreement with Mr. Robinson's hiring decisions or whether due to some yet-to-be-determined reason."[91] The Motion references Stoker's participation in the investigation as the basis for the conspiracy claim.[92]

Article 2324(A) provides: "He who conspires with another person to commit an intentional or willful act is answerable, in solido, with that person, for the damage caused by such act." However, "[a]n independent cause of action for civil conspiracy does not exist in Louisiana, rather, the actionable element of La. C.C. art. 2324 is the intentional tort that the conspirators agreed to commit and committed, in whole or in part, causing plaintiff's injury."[93] To prove a conspiracy, a plaintiff must establish that: (1) there was an agreement to commit an illegal or tortious act; (2) the act was actually committed; (3) the act resulted in the plaintiff's injury; and (4) there was an agreement as to the intended outcome or result.[94]

---

[90] *See* R. Doc. 34-1, p. 6 (referring to ALI as Stoker's employer and claiming Stoker acting outside of her "managerial capacity"), p. 9 (referring to Stoker as the operations manager); R. Doc. 43, p. 2 (alleging that Stoker is an ALI employee).

[91] No. 25-176, R. Doc. 1-1, ¶ 27.

[92] R. Doc. 34-1, p. 12

[93] *Jackson v. Bd. of Supervisors for S. Univ. & Agric. & Mech. Coll.,* 2021-0241 (La.App. 1 Cir. 3/11/22), 372 So.3d 336, 352, citing *Hardy v. Easterling,* 47,950 (La. App. 2 Cir. 4/10/13), 113 So.3d 1178, 1184.

[94] *Old Indian Tricks, L.L.C. v. Sparks,* No. 22-212, 2022 WL 4551896, at *7 (W.D. La. Sept. 6, 2022), report and recommendation adopted, No. 22-212, 2022 WL 4546263 (W.D. La. Sept. 28, 2022), citing *Jeff Mercer, LLC v. State through Dep't of Transp. & Dev.,* 51,371 (La.App. 2 Cir. 6/7/17); 222 So. 3d 1017, 1024.

Plaintiffs' conspiracy claim against Stoker fails because Plaintiffs' conspiracy allegations are generalized and lack sufficient factual support. Plaintiffs did not allege that Stoker had an agreement with anyone else to commit a tort against Plaintiffs, or an agreement to terminate Plaintiffs' ALI contract.[95]

The conspiracy claim against Stoker also fails because, as explained above, the tort claims against her relating to the termination of Plaintiffs' ALI contract, *i.e.,* LUTPA and tortious interference, fail to state a claim.[96]

## III.    CONCLUSION AND RECOMMENDATION

The *Canter v. Koehring,* analysis does not apply to negligence claim against Stoker in this case because Plaintiffs seek only economic damages.  Plaintiffs' negligence claim against Stoker, an ALI employee, also fails because the complained-of acts are alleged to have occurred while Stoker acted in her capacity as an ALI employee, for which she is not subject to liability for negligent acts.  Plaintiffs' fraud claim against Stoker fails because Plaintiffs do not plausibly allege that Stoker specifically misrepresented any material facts to Plaintiffs or that Stoker received any benefit from allegedly asking the witnesses to change their statements, and further, there is no

---

[95] *See Legier & Materne v. Great Plains Software, Inc.,* No. 03-0278, 2005 WL 1431666, at *8 (E.D. La. May 31, 2005) ("To establish a conspiracy, plaintiffs are required to provide evidence of the requisite agreement between the parties….Stated otherwise, Article 2324(A) requires a meeting of the minds or collusion between the parties for the purpose of committing wrongdoing.") (internal citation omitted).  *See also Stephens v. Bail Enf't of Louisiana,* 96-0809 (La.App. 1 Cir. 2/14/97), 690 So. 2d 124, 131, writ denied, 97-0585 (La. 4/18/97), 692 So.2d 454 (other history omitted) ("Although limited, the jurisprudence interpreting LSA–C.C. art. 2324 clearly requires an agreement (a meeting of the minds) or collusion between the parties for the purpose of committing wrongdoing.").

[96] *See Johnson v. CHL Enters.,* 115 F.Supp.2d 723, 731 (W.D. La. 2000) (dismissing nondiverse defendant as fraudulently joined, and holding that the plaintiff could not bring an actionable claim for conspiracy to conceal against the nondiverse defendant because there was no possibility that the plaintiff could recover on the underlying fraudulent concealment claim against the nondiverse defendant).  *See also Jefferson v. Lead Indus. Ass'n, Inc.,* 930 F.Supp. 241, 248 (E.D. La. 1996), aff'd, 106 F.3d 1245 (5th Cir. 1997) (granting motion to dismiss, and holding that plaintiff's conspiracy to commit fraudulent misrepresentation claim was defective because the underlying fraudulent misrepresentation claim was defective).  *See also Beta Tech., Inc.,* 2008 WL 11351462, at *5 (holding the plaintiff's civil conspiracy claim against two defendants failed as a matter of law because the evidence was insufficient to support any of the underlying tort claims alleged against those defendants).

underlying misrepresentation in the statements because Robinson admits that he wore a gun on hip in the parking lot of DLB2. Plaintiffs' LUTPA claim fails because Plaintiffs do not plausibly allege that Stoker had any motivation to harm Plaintiffs' business or allege that any act by Stoker was the cause of the termination of their ALI contract; rather, Plaintiffs allege that ALI terminated the contract because Robinson had a gun on his person in the DLB2 parking lot, which Robinson admits. These two claims also fail to provide the necessary particulars required by Rule 9(b). The tortious interference with contract claim fails as a matter of law because Plaintiffs do not allege that Stoker is an officer of ALI; rather, she is only alleged to be an employee. Finally, the conspiracy claim fails because Plaintiffs do not plausibly allege that an agreement existed between Stoker and ALI to commit a tort against Plaintiffs, and also because all of the torts underlying the conspiracy claim fail to state a claim.

Because there is no reasonable basis for the Court to predict that Plaintiffs will be able to recover on any of their claims against Stoker, she is improperly joined and must be dismissed, without prejudice. Following her dismissal, the Court has subject matter jurisdiction over the member case because there is complete diversity between the remaining parties and the amount in controversy is met.

Accordingly,

**IT IS RECOMMENDED** that Motion to Remand,[97] filed by C. Robinson Enterprise, LLC and Chad Robinson, be **DENIED** because Defendant Missy A. Stoker is improperly joined as a defendant.

**IT IS FURTHER RECOMMENDED** that all of Plaintiffs' claims against Stoker be **DISMISSED WITHOUT PREJUDICE**, and that Stoker be **TERMINATED** as a defendant.

---

[97] R. Doc. 34.

Upon the termination of Stoker as a party, this Court has diversity subject matter jurisdiction over the member case.

If this Report and Recommendation is adopted, **IT IS ORDERED** that the setting of scheduling conference is deferred until the pending Motion to Compel Arbitration of Consolidated Actions,[98] filed by Defendants, is resolved.

Signed in Baton Rouge, Louisiana, January 16, 2026.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

[98] R. Doc. 32.